## BENNETT *v.* SIMON.

[No. 18,634. Filed April 25, 1899.]

APPEAL AND ERROR.—*New Trial.*—*Evidence Not in Record.*—An assignment of error, in overruling a motion for a new trial, will not be reviewed, where the causes assigned for a new trial depend upon the evidence which is not brought into the record. *pp. 490, 491.*

PRACTICE.—*Motion for Venire De Novo.*—*When Made.*—A motion for a *venire de novo* made after the rendition of the judgment cannot be considered. *p. 491.*

WILLS.—*Construction.*—*Devise.*—Where by the terms of a will it is clear that the testator intended to devise all of a tract of land to certain persons, and the tract is found to contain more acres than the will calls for as shown by the sum of the acres devised to the different persons, the excess will be apportioned among the devisees in proportion to the number of acres named for each in the will. *pp. 491-493.*

SURVEY.—*Appeal.*—*Burden of Proof.*—The one who appeals from a survey of land, under section 5955 Horner 1897, has the burden of showing that the survey appealed from was incorrect. *p. 493.*

From the Warrick Circuit Court.    *Affirmed.*

*E. J. Crenshaw* and *W. Z. Bennett,* for appellant.

*C. W. Armstrong* and *A. R. Kiper,* for appellee.

MONKS, C. J.—This was an appeal taken by appellant from a survey of real estate under section 8035 Burns 1894, section 5955 Horner 1897. The court tried the case on the last day of the December term of said court, and made a special finding of facts, and stated conclusions of law thereon sustaining the survey, and rendered judgment accordingly. On March 7, 1898, the first day of the next term of the court below, appellant filed a motion for a new trial, which was overruled by the court. Before said motion for a new

trial was overruled, appellant filed a motion for a *venire de novo,* which was overruled. The errors assigned call in question each conclusion of law, and the action of the court in overruling the motion for a new trial, and the motion for a *venire de novo.* No attempt has been made to bring the evidence into the record. As the causes assigned for a new trial depend entirely upon the evidence, no question concerning the action of the court in overruling the motion for a new trial is presented. *Ayres* v. *Armstrong,* 142 Ind. 263. As the motion for a *venire de novo* was made after the rendition of the judgment, it came too late. To present any question, such motion must precede the rendition of the judgment. *Potter* v. *McCormack,* 127 Ind. 439, 440; *Shaw* v. *Merchants Nat. Bank,* 60 Ind. 83, 94.

It appears from the special finding that both parties trace their title to the same source, Samuel P. Hinman, who died testate in 1884, the owner of a tract of land. By his will he devised to his wife a life estate in all his real estate, "consisting of one hundred acres where I now live." The fee simple of said real estate he devised, forty acres to his son Jacob, his son Jonas twenty acres, and his daughters Lora, Harriet, and Ollie, thirteen and one-third acres each, making forty acres for the daughters; Jacob's portion to be taken from the west side of said real estate. Jacob Hinman took immediate possession of what he supposed was devised to him, bounded on the west and south by highways, and on the east by the lands devised to Jonas, Lora, Harriet, and Ollie. He built a fence along the east line of the north half of said real estate, about, if not exactly sixty-four rods from the west line of said tract, the south part of the east line remaining unfenced. Afterwards, in 1887, Jacob Hinman sold and conveyed the tract of land devised to him to appellee, who took possession thereof. Afterwards a fence was built, commencing at the south end of the fence built by Jacob Hinman, and bearing gradually to the west, until at the south line the same lacked forty-three links of being sixty-four rods east of the

west line of said tract. It is not shown who built this fence. . The twenty acres devised to Jonas were conveyed to him so that the part for the daughters abutted the tract devised to Jacob Hinman on the east, and extended the same distance north and south, to wit, twenty-five and thirty-four one-hundredths chains. The daughters named sold and conveyed said tract of land to appellant. In 1872, before the death of Samuel P. Hinman, he sold and conveyed one-half acre in the part of said one hundred acres afterwards conveyed to appellee to a church corporation "to be used as a building spot and site for a church edifice, and when it ceased to be used for that purpose, said land is to revert back to said Samuel P. Hinman and his heirs." The church took possession of the land so conveyed, and erected a church house thereon, and established a cemetery thereon, and has maintained said house ever since. The surveyor established the line between the land of appellant and appellee sixty-four rods east from the west line of appellee's land. It is insisted by appellant that the corners so established gave to appellee forty and fifty-four hundredths acres, when Jacob Hinman, his grantor, was only entitled to forty acres under his father's will. This calculation, however, includes the one-half acre owned by the church, which, being deducted would leave forty and four one-hundredths acres. In the conveyances made by the devisees of Samuel P. Hinman the 100 acres is treated as being 128 rods east and west, and the tract held by appellant and appellee as being 100 rods north and south, instead of twenty-five and thirty-four one-hundredths chains. It would seem, therefore, that the land devised by Samuel P. Hinman to his children contained more than 100 acres, after deducting the one-half acre conveyed to the church. It is evident from the facts stated in the special finding, that it was the intent of the testator, Hinman, to devise to his children the land upon which he lived at the time of his death, and that he supposed the same contained only 100 acres after deducting the one-half acre conveyed to the church. He

gave to one son forty acres, to another twenty, and to his three daughters thirteen and one-third acres each, making forty acres—in all 100 acres. If only the number of acres specified for each child is given to such child, then a part of the land owned by said testator remains undisposed of by will. Such a construction of the will is to be avoided, unless the language of the will compels it. *Groves* v. *Culph*, 132 Ind. 186, 188; *Mills* v. *Franklin*, 128 Ind. 444, 446; *Morgan* v. *McNeeley*, 126 Ind. 537, 538, and cases cited; *Roy* v. *Rowe*, 90 Ind. 54, 59. It is evident that the testator's intention was to give to said children the land upon which he lived in the proportions named in his will, and, under the rule, the excess is to be apportioned among said devisees in proportion to the number of acres named for each in the will. *Pereles* v. *Magoon*, 78 Wis. 27, 23 Am. St. 389, and note p. 392; 4 Am. & Eng. Enc. of Law, (2nd ed.) 868, and cases cited in note 1. For all that appears from the special finding, there was more than 100 acres in the tract devised, and the corners were placed so as to give appellee the proportion thereof belonging to his grantor.

The burden was upon appellant to show that the survey appealed from was incorrect. *Findley* v. *McCormick*, 50 Ind. 19. The special finding does not show that the survey is incorrect. The judgment is therefore affirmed.